F I L E D
 Clerk
 District Court

JAN 10 2019

for the Northern Mariana Islands
By_____
         (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| VINCENT SAN NICOLAS NORITA,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS DEPARTMENT OF PUBLIC SAFETY, *et al.*,<br><br>Defendants. | Case No.: 18-cv-00022<br><br>**DECISION AND ORDER SUBSTITUTING CNMI FOR DEFENDANTS EVANGELISTA AND PATRIS PURSUANT TO CNMI ATTORNEY GENERAL'S CERTIFICATION, AND GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I.   INTRODUCTION

Before this Court are Defendant Commonwealth of the Northern Mariana Islands ("CNMI") Department of Public Safety ("DPS") and all official capacity Defendants' Motion to Dismiss (ECF No. 9, "Motion"), and two Certifications of Scope of Employment and Notice of Substitution filed by the CNMI Attorney General on behalf of Defendants and DPS officers Carlo Evangelista and Stanley Patris (ECF Nos. 7 and 8). The Motion, filed after the Certifications, seeks to dismiss three state tort claims and one CNMI constitutional claim, and to dismiss Defendant DPS entirely from the case. Plaintiff filed an Opposition (ECF No. 12, "Opp'n"), and Defendants filed their Reply (ECF No. 13, "Reply"). This matter came on for hearing on November 15, 2018.

Having reviewed the briefs and considered the arguments of counsel, and for the reasons set

1

forth below, the Court SUBSTITUTES the Commonwealth for Defendants Evangelista and Patris on causes of action C (assault and battery), D (intentional infliction of emotional distress), and G (negligence). The Court further GRANTS the Defendants' Motion to Dismiss causes of action C, D, F (CNMI constitutional claim), and G, and dismisses DPS from the case.

## II.  BACKGROUND

The facts as alleged in the complaint are as follows: On December 9, 2016, Plaintiff Vincent San Nicolas Norita was driving a white sedan on Beach Road in Saipan, CNMI. (Compl. ¶¶ 10–12, ECF No. 1.) A DPS officer attempted to pull Norita over. (*Id.* ¶ 11.) Norita led multiple DPS officers in pursuit until he crashed his car. (*Id.* ¶ 13–14.) At that point, both Norita and his passenger, Joe Egipto Ada, exited the car. (*Id.* ¶ 15.) Per the DPS officers' instructions, Norita got down on the ground. (*Id.* ¶ 17.) While he was on the ground, Defendants Patris and Evangelista brutally beat him with their police batons. (*Id.* ¶¶ 18–19.) Patris and Evangelista then kneeled on Norita's face and neck while handcuffing him. (*Id.* ¶ 23.) They also refused to let the paramedics who arrived on the scene treat him. (*Id.* ¶ 24.)

After arresting Norita, Officers Patris and Evangelista transported him to the DPS office to conduct a breathalyzer test, which they ultimately did not conduct. (*Id*. ¶¶ 26–27.) They then took Norita to jail for booking. (*Id*. ¶ 28.) At the jail, the corrections officer refused to book Norita because of his injuries, instead telling Defendants to return only after Norita was given a medical clearance. (*Id*.) At this point, Defendants took Norita to the emergency room for treatment. (*Id*. ¶ 29.) Norita alleges that the beating by Patris and Evangelista resulted in severe injuries, including a fractured hand,

rib, and leg, as well as permanent disfigurement to his hand and diminished use of his leg. (*Id*. ¶¶ 31–33.)

On August 16, 2018, Norita filed suit against DPS, Robert Guerrero (in his official capacity as DPS Commissioner), Stanley Patris and Carlo Evangelista (in both their personal and official capacities), and Does I–X. He brings seven causes of action in his complaint: (A) § 1983 claim against DPS and Guerrero; (B) § 1983 claim against Evangelista and Patris; (C) assault and battery against Evangelista and Patris; (D) intentional infliction of emotional distress against all Defendants; (E) CNMI constitutional claim against Evangelista and Patris; (F) CNMI constitutional claim against DPS, Guerrero and Does I–X; and (G) negligence against all Defendants.

On September 7, 2018, CNMI Attorney General Edward Manibusan filed notices of substitution by the Commonwealth for both Evangelista and Patris as to the Commonwealth tort claims (causes of actions C, D, and G) pursuant to 7 CMC § 2210, certifying that both officers were acting within the scope of employment at the time of the incident alleged in the Complaint. (ECF Nos. 7–8.) That same day, the CNMI filed a motion to dismiss causes of action C, D, F and G (CNMI tort and constitutional claims) for lack of subject matter jurisdiction and to dismiss DPS entirely because it lacks the capacity to sue or be sued. (Memorandum at 2, ECF No. 9-1, "Memo.")

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. Rule 12(b)(1) motions are either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack does not challenge the veracity of the plaintiff's allegations, but instead asserts that they "are insufficient on their face to invoke

3

federal jurisdiction." *Id.* "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). Conversely, a defendant bringing a factual attack disputes the truthfulness of allegations that would otherwise invoke federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. In factual attacks, the district court may review evidence beyond the complaint, and need not presume the truthfulness of the plaintiff's allegations. *Id.* (citations omitted). Here, Defendants raise a facial attack. (Memo. at 2.)

The capacity of a governmental entity to be sued in federal court is determined by the law of the state where the district court is located. Fed. R. Civ. P. 17(b); *see also Shaw v. State of California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986) ("Under Rule 17(b) of the Federal Rules of Civil Procedure, the [San Jose] Police Department's capacity to be sued in federal court is to be determined by the law of California."). To raise a party's capacity to sue or be sued, "a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a).

## IV. ANALYSIS

### a. Lack of Subject Matter Jurisdiction

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's tort claims (causes of action C, D, and G) and the CNMI constitutional claim brought against DPS and Guerrero (cause of action F) because those claims are all brought against the Commonwealth proper. (Memo.

4

at 3; Reply at 5–6.) This argument is grounded in the substitution of the CNMI for the personal capacity defendants, Patris and Evangelista, and the treatment of claims against official capacity defendants as claims against the CNMI.

### i. Substitution under 7 CMC § 2210

The Commonwealth Employees Liability Reform and Tort Compensation Act ("CELRTCA"), 7 CMC §§ 2201–2210, was enacted to protect Commonwealth employees from the expense of defending lawsuits arising out of acts performed within the scope of their employment. *Kabir v. CNMI Pub. Sch. Sys.*, 2009 MP 19 ¶ 25. The Commonwealth closely modeled CELRTCA on the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act. *Id*. Both laws protect government employees by authorizing the Attorney General to certify that an employee was acting within the scope of employment. *Id.* at ¶ 26 (citing 7 CMC § 2210 and 28 U.S.C. § 2679). Upon certification, the government is substituted for the employee in the lawsuit and the proceeding continues in the same manner as any action against the government. *Id.* (citing 7 CMC § 2210(a) and 28 U.S.C. § 2679(d)). Once the government has been substituted, the litigation is thereafter governed by the Government Liability Act. *Id*. (citing 7 CMC § 2210(c)).

While the Court may have no choice but to substitute the CNMI in certain cases, CELRTCA does not apply to all claims against government employees. First, there are statutory exceptions: the protections of CELRTCA do not extend to constitutional violations and statutory private rights of action. 7 CMC § 2208(b)(2); *see also Christian v. CNMI*, 2016 WL 4004574 at *5 (D. N. Mar. I. July 7, 2016) (denying a motion to substitute brought by the Commonwealth because plaintiff had private rights of action). For this reason, the CNMI has rightfully not sought substitution in Plaintiff's cause

of action E (CNMI constitutional claim). Second, the Attorney General's certification is judicially reviewable and may be disproved by a preponderance of the evidence. *Kabir*, 2009 MP at ¶ 29. Judicial review is particularly vital because certification by the Attorney General creates a conflict of interest in cases where the government has sovereign immunity. *Id.* at ¶¶ 30–31. In those cases, the Attorney General would sit as an unreviewable judge without judicial oversight. He or she would be able to terminate the case completely simply by signing the certification, because the case could no longer proceed against the individual employee or the government, once it is substituted and asserts its immunity. *Id.* at ¶ 30 (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 428–29 (1995) (holding that scope of employment certifications filed pursuant to the Westfall Act are judicially reviewable)).

### 1. Judicial Review of Attorney General's Certification

Defendants acknowledge that the Attorney General's certification is subject to judicial review but argue that this Court lacks jurisdiction to review the certification because the Commonwealth cannot be sued under its own laws in federal court. (Reply at 6–7) (citing *Ramsey v. Muna*, 849 F.3d 858, 861 (9th Cir. 2017)). This argument turns on the theory that the certification is self-executing and that, once it is filed, the Court must automatically substitute the CNMI. Thereafter, any CNMI law claims must be dismissed without prejudice and the plaintiff must refile in the Commonwealth Superior Court. (*Id.* at 5.) Defendants analogize this procedure to removal to federal court after certification under the Westfall Act. (*Id.*) In such cases, the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). However, there is a crucial difference between removal and dismissal of a case. Under the federal framework, the lawsuit continues, albeit in a new venue, and the plaintiff retains the ability to

request review of the certification. *See Gutierrez de Martinez,* 515 U.S. at 432 ("Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution. It follows . . . that the scope-of-employment judgment . . . can and properly should be checked by the court, *i.e.*, the Attorney General's scarcely disinterested certification on that matter is by statute made the first, but not the final word."). Under Defendants' proposed scheme, the certification is conclusive for the purposes of substitution, upon which the court must dismiss all CNMI law claims brought against the now-substituted Commonwealth. While the plaintiff has the right to refile his or her claims in a Commonwealth court, the effect is to terminate the proceedings based solely on the Attorney General's unreviewed certification – the very circumstances both the U.S. and Commonwealth Supreme Courts sought to avoid, as they "undermine[] the underlying principles of a democratic form of government." *Kabir*, 2009 MP at ¶ 30 (citing *Gutierrez de Martinez*, 515 U.S. at 429).

The Ninth Circuit Court of Appeals has recognized the authority of this Court to review a CELRTCA certification signed by the CNMI Attorney General. *Kabir v. CNMI Pub. Sch. Sys.*, 610 F.3d 1114, 1115 (9th Cir. 2010) (per curiam) (remanding case to the district court, allowing plaintiff "the opportunity to challenge the Attorney General's certification through an evidentiary hearing."). Defendants assert that the Ninth Circuit's holding in *Ramsey* precludes this review because the Commonwealth will be defending the certification, putting it before a federal court on an issue of CNMI law. This Court disagrees. The validity of the Attorney General's certification is a threshold issue. *See Elameto v. Ramsey*, 2018 MP 15 ¶ 11 (holding that the Commonwealth Superior Court's denial of substitution pursuant to CELRTCA certification is "sufficiently separate from the case's

7

merits" for review under the collateral order doctrine); *see also Martin v. Patel*, No. 17-CV-916 JLS (WVG), 2018 WL 2717848, at *2 (S.D. Cal. June 6, 2018), appeal dismissed, No. 18-55791, 2018 WL 4489192 (9th Cir. June 26, 2018) ("As a threshold issue, the Court first addresses whether the United States properly substituted itself for Defendant" pursuant to a certificate of scope of employment filed under the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(c)); *Osborn v. Haley*, 549 U.S. 225, 242 (2007) (Westfall certification is dispositive for establishing forum, but "does not preclude a district court from resubstituting the federal official as defendant *for purposes of trial*."). If the Court determines that substitution is proper, the Commonwealth can assert sovereign immunity, move to dismiss for lack of subject matter jurisdiction, or put forth any other defense it may have.

### 2.  Motion for Substitution

The parties disagree as to the proper procedure for filing the Attorney General's certification. Plaintiff asserts that Federal Rule of Civil Procedure 7(b)(1) requires a motion to substitute. (Opp'n at 4.) Defendants maintain that notice of substitution is sufficient. (Reply at 3.) Both parties point to cases in which their preferred method was accepted by the district court, but neither party points to any binding authority that demands one method over the other. CELRTCA states that upon certification "the Commonwealth shall be substituted as the party defendant . . . [and] [a]n order dismissing the employee from the suit shall be entered." 7 CMC § 2210(a). However, this section is not self-executing. *Cf. Johnson v. Rambo* (*Johnson II*), No. C06-5258 RJB, 2006 WL 2401113 at *2 (W.D. Wash. Aug. 18, 2006). Federal Rule of Civil Procedure 7(b)(1) requires that "[a] request for a court order . . . be made by motion." Read together, it makes sense that if an order must be entered, a

motion is the proper procedure.[1] More importantly, "[m]otion procedure found in the Federal Rules of Civil Procedure and in the Local Rules . . . [is] designed to fulfill the requirements of due process, the hallmarks of which are notice and an opportunity to be heard." *Johnson II*, 2006 WL 2401113 at *1. A motion to substitute has the additional benefit of triggering the local rules regarding motion practice, including a deadline for opposition. *See* LR 7.1. Therefore, the Court agrees with the Plaintiff that a motion to substitute is the better procedure by which to file a CELRTCA certification. Nevertheless, Plaintiff received notice and has had more than ample opportunity to be heard regarding the certification, so the Court will turn to his request for discovery.

### 3. Limited Discovery

In holding that CELRTCA certifications are judicially reviewable, the Commonwealth Supreme Court recognized that the Commonwealth Superior Court, assuming reviewability, had set forth a procedural framework for review. *Kabir*, 2009 MP at ¶ 31 n.19 (quoting *Owens v. Saccomanno*, Civ. No. 04-288E (N. Mar. I. Super. Ct. Sept. 28, 2006) (Order Setting Procedural Guidelines for Judicial Review of Attorney General Certification Under PL 15-22)). Under this framework, the certification is subject to de novo review in the trial court. *Id.* (citing *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) (recognizing plaintiff's right to challenge Attorney General's certification pursuant to the Westfall Act in district court)). The scope of employment determination is governed by the

---

[1] Filing a motion to substitute pursuant to a CELRTCA certification appears to be the accepted practice in the Commonwealth Superior Court. *See Elameto v. CNMI*, No. 16-0110-CV (N. Mar. I. Super. Ct. Aug. 11, 2017); *Ayuyu v. Deleon Guerrero,* No. 13-0236-CV (N. Mar. I. Super. Ct. Apr. 7, 2014); *Maratita v. Fitial*, No. 12-0194 (N. Mar. I. Super. Ct. May 28, 2013); *Ayuyu v. Mendiola*, No. 12-0051-CV (N. Mar. I. Super. Ct. Nov. 29, 2012).

Commonwealth's respondeat superior law. *Id.* The initial burden of proof is on the party requesting review to "present evidence sufficient to disprove certification by a preponderance of the evidence." *Id.* (citing *Green*, 8 F.3d at 698). Hearings are permitted, but not required. *Id.* "A hearing should not be held where certification, pleadings, affidavits, and any supporting documentary evidence do not reveal any disputed issues of material fact as to scope of employment." *Id.* (citing *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997)).

The framework provided by the Commonwealth Superior Court does not address when discovery might be appropriate. In the context of Westfall Act certifications, some circuits have held that limited discovery may be permitted, but only if necessary to resolve a factual dispute concerning the scope of employment. *See Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) ("To rebut the certification and obtain discovery, a plaintiff must 'alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment.' If a plaintiff meets this pleading burden, he may, if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction.") (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)); *See also Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992) ("[I]f there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing, if necessary. But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible."); *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d at 1155 ("Only if the district court concludes that there is a genuine question of fact material to

the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.").

Here, Plaintiff requests "limited discovery in order to address the question of scope of employment and substitution." (Opp'n at 8.). However, Plaintiff has not alleged that Patris and Evangelista's actions were outside the scope of their employment. Plaintiff's reliance on *Johnson v. Rambo* is misplaced, as the plaintiffs there argued that the defendant was not acting within the scope of employment *before* requesting a hearing and limited discovery. (*Johnson I*), No. C06-5258 RJB, 2006 WL 2038056, at *2 (W.D. Wash. July 19, 2006), *amended on reconsideration Johnson II*, 2006 WL 240113. *Johnson* involved a two-car collision involving two members of the United States Army. *Johnson I* at *1. The government filed a Westfall certification for one of the drivers, defendant Rambo. *Id.* Plaintiffs challenged the certification and requested an evidentiary hearing and discovery on the scope of employment issue. *Id.* at *2. A number of factors, including the purpose of Rambo's trip and the timing and location of the accident, could have affected the scope of employment analysis. *Id.* at *3 ("In Washington State, the act of a servant is within the scope of his employment if it occurs while he was engaged in the work for which he was employed, at a time when, and in a place where, he is subject to the control of the master.") (quotation and internal brackets omitted). The District Court concluded plaintiff was entitled to limited discovery to develop and present evidence to disprove the Attorney General's certification by a preponderance of the evidence. *Id.* at *4. In this case, Defendants Evangelista and Patris were both employed as police officers by DPS at all times relevant to this action. (Complaint ¶¶ 8,9.) They, along with other DPS officers, pursued and arrested Norita after a failed traffic stop. (*Id.* ¶¶ 10–13, 23.) Here, unlike *Johnson*, the facts as alleged by Plaintiff indicate that

Defendants Evangelista and Patris were engaged in police work at the time of the conduct in question. Plaintiff has neither challenged the certifications nor alleged sufficient facts to create a genuine factual dispute material to the scope of employment issue. Discovery is therefore inappropriate, and Plaintiff's request is denied.

For these reasons, the CNMI is substituted for Defendants Evangelista and Patris for causes of action C (assault and battery), D (intentional infliction of emotional distress), and G (negligence) pursuant to their certifications and Notice. (ECF Nos. 7, 8.)

### ii. Official Capacity Defendants

Suits filed against government officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). In an official capacity suit, the real party in interest is the government entity. *Id.* "Defendants in an official-capacity action may assert sovereign immunity." *Lewis v. Clarke*, __ U.S. __, 137 S.Ct. 1285, 1291 (2017) (citing *Graham*, 473 U.S. at 167)).

Plaintiff filed suit against Defendant Guerrero in his official capacity as Commissioner of DPS and Defendants Patris and Evangelista in their official capacities as DPS officers. (Compl. 1.) The Commonwealth, along with all official capacity Defendants, asserted sovereign immunity against Plaintiff's CNMI law claims. (Memo. at 3.) "[T]he Commonwealth may not be sued without its

consent on claims arising under its own laws." *Ramsey*, 849 F.3d at 861. The Commonwealth has waived its sovereign immunity against certain Commonwealth claims, but it expressly granted "exclusive original jurisdiction" of such claims to the Commonwealth trial court. 7 CMC § 2251. This language indicates that the Commonwealth is not willing to be sued in federal court. *Ramsey*, 849 F.3d at 861.

Plaintiff argues that the holding in *Ramsey* should not be read to strip federal courts of their jurisdiction over CNMI constitutional claims against the Commonwealth because "the CNMI Constitution is not the same as CNMI law." (Opp'n at 13.) This argument is unpersuasive. In *Ramsey*, the Ninth Circuit recognized that the CNMI has the power to enact its own laws, and its sovereignty immunity exists because "there can be no legal right against the authority that makes the law on which the right depends." *Ramsey*, 849 F.3d at 860 (quoting *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907)). It held that "the Commonwealth may not be sued without its consent on claims arising under its own laws." *Id.* at 861. Plaintiff asks this Court to interpret this statement to mean only that the Commonwealth may not be sued on its tort and contract laws. (Opp'n at 13.) Such a narrow reading of the *Ramsey* holding is unsupported by the language and reasoning of the case.

Therefore, the claims against all official capacity Defendants are treated as claims against the Commonwealth itself. These Defendants may assert sovereign immunity against claims arising from CNMI law, including the CNMI Constitution. For these reasons, Defendants' motion to dismiss causes of action C (assault and battery), D (intentional infliction of emotional distress), F (CNMI constitutional civil rights claim against DPS and Guerrero), and G (negligence) is GRANTED, and those claims are dismissed without prejudice. Cause of action A (federal § 1983 civil rights claim)

survives insofar as the CNMI and official capacity Defendants are sued for injunctive relief. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Graham*, 473 U.S. at 167 n.14)).

### b. Capacity to Sue or Be Sued

Defendants assert that DPS must be dismissed from the case because it lacks the capacity to sue or be sued under Commonwealth law. (Memo. at 4.) The capacity of a government entity to sue or be sued is governed by state law. Fed. R. Civ. P. 17(b)(3). Here, Commonwealth law is silent as to DPS's capacity to sue or be sued, and the Commonwealth Supreme Court has not held that DPS lacks that capacity. "When the state's highest court has not spoken on an issue, we must determine what result the court would reach if we were standing in its shoes by examining 'state appellate court opinions, statutes and treatises.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1125 (9th Cir. 2008) (quoting *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991)). Defendants argue that DPS does not have the capacity because Commonwealth law explicitly grants that power to a limited number of Commonwealth entities, among which DPS is not included. (Memo. at 5.) In other words, the CNMI legislature's express grant of the capacity to sue or be sued to some agencies means that exclusion of that language in other parts of the Commonwealth Code was an intentional statement that those agencies lack the capacity.

"The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation,

all omissions should be understood as exclusions.'" *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991)). Here, Defendants ask the Court to apply this doctrine not to *a* statute, but to separate sections of the Commonwealth Code, enacted over a period of years.[2] Courts have questioned the utility applying the doctrine under such circumstances. *See Moreno Rios v. United States*, 256 F.2d 68, 71 (1st Cir. 1958) ("the maxim expressio unius est exclusio alterius is nothing but an aid to interpretation, and as an aid it is pretty weak when applied to acts of Congress enacted at widely separated times"); *cf. Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 520 (1992) (rejecting an argument relying on an inference from legislative history in part because "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.") (internal quotation omitted)).

Keeping in mind the limitations of the doctrine, the Court turns to its application. The impact of legislative silence depends on context. The U.S. Supreme Court has "long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). The question, then, is whether

---

[2] The duties and responsibilities of the Department of Public Safety are codified at 7 CMC § 2504, originally enacted by PL 1-8 in 1978. Defendants point to ten CNMI agencies afforded the capacity to sue or be sued: Marianas Visitor Authority, 4 CMC § 2124(f) (enacted by PL 11-15 in 1998); Commonwealth Ports Authority, 2 CMC § 2121 (enacted by PL 2-48 in 1981); Mariana Islands Housing Authority, 2 CMC § 4431 (enacted by District Law 5-67 in 1978); Historic Preservation (Commonwealth Museum Act), 2 CMC § 4874(d) (enacted by PL 10-5 in 1996); Commonwealth Board of Accountancy, 4 CMC § 3402(g) (enacted by PL 13-52 in 2003); Commonwealth Free Trade Zone Authority, 4 CMC § 51120 (enacted by PL 12-20 in 2000); Commonwealth Utilities Corporation, 4 CMC § 8123(c) (enacted by PL 4-47 in 2005); Commonwealth Development Authority, 4 CMC § 10203(a)(4) (enacted by PL 4-49 in 1985); Commonwealth Healthcare Corporation, 3 CMC § 2824(i) (enacted by PL 16-51 in 2009); Health Care Professions Licensing Board, 3 CMC § 2206(f) (enacted by PL 15-105 in 2007).

"circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded." *N.L.R.B. v. SW Gen., Inc.*, __ U.S. __, 137 S. Ct. 929, 940 (2017) (quoting *Chevron, U.S.A, Inc. v. Echazabal*, 536 U.S. 73, 81 (2002)). The Commonwealth Supreme Court recognized the express inclusion of the phrase "to sue or be sued" as a limited legislative waiver of sovereign immunity. *Pangelinan v. NMI Retirement Fund*, 2009 MP 12 ¶ 26 ("When the legislature opened the door for lawsuits against the Retirement Fund, it waived its immunity from damages, but in doing so did not also expressly waive the Fund's immunity from interest on those damages.") A waiver of sovereign immunity is no small act. It is fair to infer that the CNMI legislature considered whether agencies should retain immunity when creating them. Moreover, such a waiver must be unequivocal, either in express language or "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Ramsey v. Muna*, 849 F.3d 858, 860–61 (9th Cir. 2017) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). The Commonwealth Supreme Court also acknowledged a distinction between "sue and be sued" agencies and those that are not "sue and be sued." *Marine Revitalization Corporation v. Department of Land and Natural Resources* (*Marine Revitalization II*), 2011 MP 2 ¶ 17. Neither party has pointed to, nor has this Court found, any instance in the Commonwealth Code in which an agency is *expressly denied* the capacity to sue or be sued. If there are two distinct groups of agencies, those with capacity and those without, it follows that legislative silence was intended to mean an agency lacks the capacity to sue and be sued.

      Defendant further argues, citing to *Marine Revitalization II*, that the CMNI Supreme Court recognizes a distinction between autonomous and non-autonomous agencies for the purposes of capacity to sue or be sued. However, there the court only found that the Department of Lands and

Natural Resources ("DLNR") did not "cast off the cloak of sovereignty" in regard to interest damages by entering into a commercial venture because that exception only applies to "sue or be sued" agencies. *Marine Revitalization II*, 2011 MP 2 ¶ 17. It recognized that "DLNR is a non-autonomous agency of the sovereign that enjoys immunity," but it did not go so far as to say that all executive agencies under the complete control of the governor lack the capacity to sue or be sued. *Id.* However, reading together the Commonwealth Supreme Court opinions regarding capacity to sue or be sued, it is clear that (1) the legislature expressly waived the immunity of some agencies by including "sue or be sued" language, and (2) other agencies enjoy immunity. Therefore, the Court is persuaded that the CNMI legislature's silence as to DPS's capacity to sue or be sued indicates that it did not intend to grant such capacity to DPS.

Plaintiff counters that DPS has allowed itself to be sued and brought at least one action in its own name, indicating that it has the capacity to sue and be sued. (Opp'n at 17.) Plaintiff relies on *Orlando v. CNMI Department of Lands and Natural Resources*, Order Granting in Part Motion to Correct Misjoinder and Granting Motion to Dismiss Retaliation Claim, Case No. 1:18-CV-00015 (D. N. Mar. I. Aug. 29, 2018), in support of his argument that the history of lawsuits against DPS undermines Defendants' motion to dismiss the agency. *Orlando* is not binding precedent. Moreover, it involved a Title VII claim, a statute in which Congress expressly abrogated state immunity. The court in *Orlando* held that "[b]ecause the Commonwealth's immunity to suit under Title VII has been abrogated, so has its agencies.'" *Orlando* at 8. That is not the case here. Plaintiff's theory is essentially that DPS has forfeited its right to assert capacity by allowing itself to sue and be sued. The fact that DPS has been a party to multiple lawsuits is troublesome, as the lack of consistency indicates that the

Commonwealth uses capacity as a shield only when convenient. However, there is no evidence that any Commonwealth court has explicitly held DPS has the capacity to sue or be sued, or even addressed that question. Moreover, Plaintiff's argument is unpersuasive because it would allow the Attorney General to unilaterally alter Commonwealth law through litigation tactics or failure to timely or successfully assert lack of capacity under Rule 17.

Because DPS lacks the capacity to sue or be sued under Commonwealth law, it is DISMISSED from the case.

## V.     CONCLUSION

Pursuant to the Attorney General's certification, the Court orders that Defendants Evangelista and Patris be substituted by the Commonwealth for claims C, D, and G. It is further ordered that because the Department of Public Safety lacks the capacity to be sued, it is dismissed from the case. Accordingly, Defendants' motion to dismiss causes of action C, D, F and G for lack of subject matter jurisdiction is GRANTED IN FULL. The following three causes of action remain:

(A) § 1983 claim against the Commonwealth and official capacity Defendants, insofar as it is for injunctive or declaratory relief only;

(B) § 1983 claim against Evangelista and Patris, in their personal capacities (and official capacities, insofar as it is for injunctive or declaratory relief only); and

(E) CNMI constitutional claim against Evangelista and Patris in their personal capacities.

All remaining claims are dismissed without prejudice. The Clerk is ordered to change the caption to add the Commonwealth of the Northern Mariana Islands as a named Defendant and to remove DPS

as it lacks the capacity to be sued.

      IT IS SO ORDERED on this 10th day of January, 2019.

                                                    RAMONA V. MANGLONA
                                                    Chief Judge